IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

In re:  Chapter 11

BOYD BROTHERS, INC.,  Case No. 3:11-50536

   Debtor  (*Emergency Hearing Requested*)

_____/

### DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIENS PURSUANT TO 11 U.S.C. §§ 105(a), 361, 363, 541 AND 552 AND BANKRUPTCY RULE 4001

> **STATEMENT OF RELIEF REQUESTED**
>
> The Debtor seeks authority to use cash collateral to fund its operating expenses and costs of administration in this Chapter 11 case and to provide replacement liens as described below as adequate protection for the interests in its cash collateral. The Debtor believes that the Lenders (as defined below) may assert valid and perfected security interests in cash collateral. The Debtor proposes to grant to the Lenders as adequate protection replacement liens on all cash collateral acquired by the Debtor or the estate on or after the Petition Date to the same extent, validity, and priority held as of the Petition Date.

BOYD BROTHERS, INC., as debtor and debtor-in-possession (the "**Debtor**"), by and through its undersigned attorneys, files its Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Motion**") and requests the entry of interim and final orders approving the Debtor's use of cash collateral. In support of the Motion, the Debtor respectfully represents as follows:

## Jurisdiction

1.　This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper in this district pursuant to 28 U.S.C. §1408. The statutory predicates for the relief sought herein are Sections 105, 363, and 541 of the Bankruptcy Code. No previous application for the relief sought herein has been made by the Debtor to this Court or any other court.

## Summary of Relief Requested

2.　As further set forth in the chart below, prior to the Petition Date, the Debtor executed separate loan agreements in favor of Hancock Bank, as successor in interest to Peoples First Community Bank by asset acquisition from the FDIC as Receiver for Peoples First Community Bank ("**Hancock**"), All Points Capital Corp. ("**All Points**"), and Mac Papers, Inc. ("**Mac Papers**") (collectively, the "**Lenders**"), pursuant to which the Debtor granted to each Lender a security interest in, inter alia, its accounts receivable and inventory. On information and belief, the Lenders may assert that they have liens on accounts receivable generated by the Debtor's business and that they therefore have an interest in the Debtor's cash collateral within the meaning of 11 U.S.C. § 363(a) (the "**Cash Collateral**"). The Debtor seeks authority to use all Cash Collateral in whatever form.

3.　On information and belief, Hancock asserts that it has a first priority position with respect to, inter alia, accounts receivable and inventory. Accordingly, it is the Debtor's position that the only interest in Cash Collateral entitled to adequate

protection is that of Hancock. Out of precaution, however, the Debtor has included All Points and Mac Papers within the scope of the Motion.

4. The Debtor intends to use the Cash Collateral in the continued operation of its business and in accordance with the budget (the "**Budget**") attached as Exhibit A and by reference incorporated herein.

5. Accordingly, the Debtor seeks the entry of an interim order authorizing the use of Cash Collateral (the "**Interim Order**") in the form attached hereto as **Exhibit B** to avoid immediate and irreparable harm to the estate pending a final hearing and the entry of a final order. To the extent there are inconsistencies between this summary and the terms of the Interim Order, the terms of the Interim Order shall control.

6. The significant provisions of the proposed Interim Order are as follows:

(a) Interim Relief. The Order shall be granted on an interim basis, pending a final hearing on the Motion.

(b) Budget. The Debtor's use of cash collateral will be materially consistent with the Budget, subject to a 20% variance on an aggregate basis. Interim Order at ¶2.

(c) Adequate Protection. The following shall constitute good and sufficient adequate protection to the Lenders for the Debtor's use of the Cash Collateral:

  a. Adequate Protection Liens. The Debtor shall provide the Lenders with replacement liens identical in extent, validity and priority as such liens existed on the Petition Date. Interim Order at ¶4;

  b. Reporting Requirements. The Debtor shall provide on a weekly basis profit and loss statements on a cash basis to counsel for the Lenders. Interim Order at ¶3; and

(d) Event of Default: It shall be an event of default if the Debtor exceeds the 20% variance on an aggregate basis provided for

in the Interim Order; provided, however, in the event of a default, the Debtor's authority to use Cash Collateral shall continue until the applicable Lender obtains an order by appropriate motion after notice and a hearing requiring the Debtor to cease using Cash Collateral. Interim Order at ¶9.

7. At the initial hearing on this Motion, the Debtor will seek to use Cash Collateral in the amount of approximately $991,037.00, as set forth in the Budget, for the next four weeks or such other amount as is necessary to avoid immediate and irreparable harm on an interim basis pending entry of a final order on this Motion.

## Background

8. On October 7, 2011 (the "**Petition Date**"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

9. The Debtor is operating its business and managing its property as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

10. Located in Panama City, Florida, the Debtor has been in operation since 1931 and provides publication and general commercial printing services. The Debtor serves the southeast United States with a complete digital prepress department, as well as a comprehensive postpress and mailing operation. The Debtor currently employs approximately 110 employees.

11. The Debtor's financial performance has suffered as a result of the harsh economic conditions that have acutely affected the printing industry. The Debtor filed its bankruptcy case in an effort to reorganize through a restructuring of its debt.

12. No trustee or examiner has been appointed in this case and no official committees have yet been appointed pursuant to Section 1102 of the Bankruptcy Code.

### Summary of Interests in Cash Collateral

13. A summary chart of the potential interests in Cash Collateral is as follows:

| Lender | Collateral as Defined in UCC | Date of Filing UCC | Amount Outstanding[1] |
|---|---|---|---|
| Hancock Bank | First purchase money security interest on furniture, fixtures, equipment, machinery, office and computer equipment and supplies, accounts receivable and inventory, including books and records related thereto | 1/27/97 | $11,124,653.00 |
| All Points Capital Corp. | All equipment, machinery, goods accounts receivable and inventory | 11/1/07 | $2,923,022.00 |
| Mac Papers, Inc. | All tangible and intangible personal property, including cash, profits, rents, fixtures, machinery, equipment, and accounts receivable | 9/25/09 | $150,309.60 |

### Relief Requested and Bases for Relief

14. The Debtor reserves all rights, claims and interests with respect to the validity and priority of the Lenders' liens. The Debtor files this Motion and seeks entry of an order authorizing the use of Cash Collateral generally and for purposes that include the following:

    (a)    care, maintenance, and preservation of the Debtor's assets;

    (b)    payment of necessary payroll, rent, suppliers, utilities, and other business expenses;

---

[1] The amounts in this column are approximate amounts and the Debtor reserves all rights with respect to the validity and amount of the Lenders' claims.

    (c)    other payments necessary to sustain continued business operations; and

    (d)    costs of administration in this Chapter 11 case.

15. The Debtor requests authority to use the Cash Collateral immediately to pay the operating expenses set forth on the Budget attached hereto as **Exhibit A** and incorporated herein by reference, which are necessary to continue the operation of the Debtor's business, to maximize the return on its assets, and to otherwise avoid irreparable harm and injury to its business and its estate.

16. There is insufficient time for a final evidentiary hearing, as required by Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, to be held before the Debtor must arguably use Cash Collateral. If this Motion is not considered on an expedited basis and if the Debtor is denied the ability to immediately use Cash Collateral, there will be direct and immediate harm to the continuing operation of the Debtor's business. In order to continue its business activity in an effort to achieve successful reorganization, the Debtor needs to use Cash Collateral in its ordinary business operations. The inability of the Debtor to meet its ordinary business expenses will require the Debtor to discontinue normal operations which will result in irreparable injury to the Debtor and its chances for reorganization. Any such discontinuation would also adversely impact upon the value of any secured party's collateral. Indeed, it is in the best interests of all creditors and the Debtor that the Debtor be able to use its Cash Collateral since such usage will preserve the value of any secured party's collateral. Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure authorizes this Court to hold an immediate preliminary hearing on this Motion.

17. "Cash Collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a). Pursuant to section 363(c)(2) of the Bankruptcy Code, the Court may authorize the Debtor to use Cash Collateral as long as the applicable secured creditors consent or are adequately protected. *See, e.g., In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984); *see also In re McCormick*, 354 B.R. 246, 251 (Bankr. C.D. Ill. 2006) (to use the cash collateral of a secured creditor, the debtor must have the consent of the secured creditor or must establish to the Court that the secured creditor's interest in the cash collateral is adequately protected).

18. In the event that the Lenders assert a lien on Cash Collateral, in exchange for the Debtor's ability to use Cash Collateral in the operation of its business, the Debtor proposes to grant, as adequate protection, to the petitioning Lenders a replacement lien equal in extent, validity, and priority to the lien held by the Lenders as of the Petition Date. The Debtor asserts that any interests of the Lenders will be adequately protected by the replacement liens, the reporting outlined above, and the budgetary constraints.

19. If allowed to use Cash Collateral, the Debtor believes that it can stabilize its business operations and maintain going concern value. Otherwise, the Debtor's business operations will cease and its assets will have only liquidation value.

### Basis for Emergency Relief

20. The facts previously set out herein clearly justify an immediate hearing on this Motion. If the Debtor cannot utilize Cash Collateral, the Debtor will be unable to pay operating expenses necessary to continue the operation of the Debtor's business and

will be irreparably harmed. The Debtor has narrowly tailored the relief requested on an emergency basis in order to allow it to survive pending a final Cash Collateral hearing, as required by Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, the Debtor respectfully requests that this Court: (1) enter the Interim Order granting the instant Motion and authorizing the interim use of Cash Collateral, the proposed form of which is attached as **Exhibit B**, (2) schedule a preliminary hearing on the Motion at the earliest possible time, (3) schedule a final cash collateral hearing in accordance with Bankruptcy Rule 4001(b)(2), (4) authorize the Debtor to use the Cash Collateral in the operation of its business, and (5) grant such other and further relief as may be just and proper.

/s/ *Edward J. Peterson*
Edward J. Peterson
Florida Bar No. 0014612
Stichter Riedel Blain & Prosser, P.A.
110 East Madison Street, Suite 200
Tampa, Florida  33602
(813) 229-0144 – Phone
(813) 229-1811 – Fax
epeterson@srbp.com
Attorneys for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Debtor's Emergency Motion For Entry Of Interim and Final Orders Authorizing Use Of Cash Collateral And Granting Replacement Liens Pursuant To 11 U.S.C. §§ 105(a), 361, 363, 541 and 552 and Bankruptcy Rule 4001 has been furnished on this 9th day of October, 2011, by the Court's CM/ECF System to the Office of the U.S. Trustee and all other parties receiving electronic service and by email to:

Robert J. Powell, Esquire
Counsel for Hancock Bank
rpowell@sphlaw.com

Arthur Spector, Esquire
Counsel for All Points Capital Corp.
aspector@bergersingerman.com

Robert Menzies, Esquire
Counsel for Peoples Capital and Leasing Corp.
rmenzies@ralaw.com

Arlene Gelman, Esquire
Counsel for Siemens Financial Services, Inc.
agelman@vedderprice.com

/s/ Edward J. Peterson
Edward J. Peterson

# EXHIBIT A

**Boyd Brothers, Inc.**
Four Week Budget

| | Week 1 | Week 2 | Week 3 | Week 4 | Total for Four Weeks |
|---|---|---|---|---|---|
| Total Monthly Income | 275,000 | 275,000 | 275,000 | 275,000 | 1,100,000 |
| **Expenses** | | | | | |
| Materials & Outside Services | | | | | |
| Paper - Sheet Purchases | 12,722 | 12,722 | 12,722 | 12,722 | 50,889 |
| Paper - Web Roll Purchases | 52,260 | 52,260 | 52,260 | 52,260 | 209,038 |
| Ink | 4,013 | 4,013 | 4,013 | 4,013 | 16,052 |
| UV Coating | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 |
| Ink - Web | 6,173 | 6,173 | 6,173 | 6,173 | 24,694 |
| Other Chargeable Materials | 5,500 | 5,500 | 5,500 | 5,500 | 22,000 |
| Outside Services | 4,499 | 4,499 | 4,499 | 4,499 | 17,996 |
| Outside Commissions Paid | 1,125 | 1,125 | 1,125 | 1,125 | 4,499 |
| Total Materials & Outside Service Expenses | 87,792 | 87,792 | 87,792 | 87,792 | 351,168 |
| Total Plant Payroll Expense | 68,298 | 68,298 | 68,298 | 68,298 | 273,191 |
| Fixed Plant Expenses | | | | | |
| Insurance Expense | 2,855 | 2,855 | 2,855 | 2,855 | 11,422 |
| Taxes-Property | 2,191 | 2,191 | 2,191 | 2,191 | 8,764 |
| Total Fixed Plant Expenses | 5,047 | 5,047 | 5,047 | 5,047 | 20,186 |
| Variable Plant Expenses | | | | | |
| Repairs & Maintenance | 12,500 | 12,500 | 12,500 | 12,500 | 50,000 |
| Freight | 5,843 | 5,843 | 5,843 | 5,843 | 23,373 |
| Supplies | 11,727 | 11,727 | 11,727 | 11,727 | 46,906 |
| Utilities | 13,664 | 13,664 | 13,664 | 13,664 | 54,656 |
| Utility Deposit | - | - | 6,500 | 6,500 | 13,000 |
| Total Variable Plant Expenses | 43,734 | 43,734 | 50,234 | 50,234 | 187,935 |
| Administrative Expenses | | | | | |
| Salary-Jim Boyd Sr. / Jim Boyd Jr. | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| Legal Expense | - | - | - | - | - |
| CRO Fees | 10,000 | 10,000 | 10,000 | 10,000 | 40,000 |
| Wages-Accounting Employees | 2,959 | 2,959 | 2,959 | 2,959 | 11,838 |
| Wages-Other Administrative Employees | 562 | 562 | 562 | 562 | 2,248 |
| Payroll Taxes | 308 | 308 | 308 | 308 | 1,231 |
| Payroll Taxes-Past Due Payroll Taxes[1] | 2,000 | 2,000 | 2,000 | 2,000 | 8,000 |
| Workers' Compensation | 143 | 143 | 143 | 143 | 573 |
| Life Insurance | 1,274 | 1,274 | 1,274 | 1,274 | 5,096 |
| Computer Expense-Admin | 475 | 475 | 475 | 475 | 1,901 |
| Repairs & Maintenance - Non Plant | 66 | 66 | 66 | 66 | 265 |
| Telephone / Internet Expense | 1,438 | 1,438 | 1,438 | 1,438 | 5,753 |
| Total Administrative Expense | 22,226 | 22,226 | 22,226 | 22,226 | 88,905 |
| Total Selling Expenses (Sales force salaries & expenses) | 17,413 | 17,413 | 17,413 | 17,413 | 69,652 |
| Total Monthly Expenses | 244,509 | 244,509 | 251,009 | 251,009 | 991,037 |
| **Total Cash Flow for Period** | 30,491 | 30,491 | 23,991 | 23,991 | 108,963 |

1  By separate motion, Debtor asking for authority to pay past due payroll taxes.

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

In re:  Chapter 11

BOYD BROTHERS, INC.  Case No.

    Debtor

_____/

**INTERIM ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIENS PURSUANT TO SECTIONS 105(a), 361, 363, 541 AND 552 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE[1]**

THIS CASE came on for hearing on October ___, 2011, upon the Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Motion**") (Doc. No. _____). The Motion seeks the entry of interim and final orders authorizing the use of "Cash Collateral" as defined in Section 363(a) of the Bankruptcy Code. The Court, having reviewed the Motion and having heard the argument and proffers of counsel, finds that the Motion should be granted to prevent immediate and irreparable harm to the Debtor's business. Accordingly, for the reasons stated orally and recorded in open Court, which shall constitute the decision of the Court, it is

**ORDERED** that:

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the Motion.

1. The Motion is granted on an interim basis pending a final hearing to be conducted by the Court on _____, at _____.

2. The Debtor is authorized to use all Cash Collateral (as that term is defined in Section 363(a) of the Bankruptcy Code) including, without limitation, cash, deposit accounts and accounts receivable in accordance with the budget (the "**Budget**"), a copy of which is attached hereto as **Exhibit A**, so long as the aggregate of all expenses for each week do not exceed the amount in the Budget by more than twenty percent (20%) for any such week on a cumulative basis (the "**Variance**"). Notwithstanding the foregoing, subject to the provisions of paragraph nine of this Order, expenditures in excess of the Variance or not on the Budget will not be deemed to be unauthorized use of Cash Collateral, unless the recipient cannot establish that the expense would be entitled to administrative expense priority if the recipient had extended credit for the expenditure.

3. Beginning the week of October 10, 2011, the Debtor shall provide on a weekly basis profit and loss statements on a cash basis to counsel for the Lenders by email by 5:00 p.m. (EST) on Friday of the following week.

4. The Lenders are granted as adequate protection post-petition replacement liens against the Debtor's Cash Collateral to the same extent, validity, and priority as existed as of the Petition Date.

5. This Order is not and shall not be construed as determinative as to whether or not any creditor has a valid lien on any property of the Debtor or its estate. This Order is not and shall not be construed as determinative as to the extent or amount of any secured claim associated with any such lien.

6. This Order is without prejudice to the Debtor's right to challenge the extent, validity, or priority of any lien or claim of any creditor, and is likewise without prejudice to the right of any creditor to seek additional relief concerning Cash Collateral by subsequent motion and nothing contained in this Order shall be deemed to constitute a waiver of any party's rights.

7. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court.

8. This Order is without prejudice to the Debtor's rights to seek authority by separate motion to pay monies in excess of the amounts set forth in the Budget.

9. It shall be an event of default if the Debtor exceeds the Variance without the prior written consent of the applicable Lender, which consent shall not be unreasonably withheld; provided, however, in the event of a default, the Debtor's authority to use Cash Collateral shall continue until the applicable Lender obtains an order by appropriate motion after notice and hearing requiring the Debtor to cease using Cash Collateral.

10. All persons and entities owing monies to the Debtor are authorized and directed to pay the monies to the Debtor, without setoff, which sums shall upon collection by the Debtor constitute Cash Collateral.

**DONE AND ORDERED** at Panama City, Florida, on _____.

_____
United States Bankruptcy Judge

# EXHIBIT A

**Boyd Brothers, inc.**
Four Week Budget

| | Week 1 | Week 2 | Week 3 | Week 4 | Total for Four Weeks |
|---|---:|---:|---:|---:|---:|
| Total Monthly Income | 275,000 | 275,000 | 275,000 | 275,000 | 1,100,000 |
| **Expenses** | | | | | |
| Materials & Outside Services | | | | | |
| Paper - Sheet Purchases | 12,722 | 12,722 | 12,722 | 12,722 | 50,889 |
| Paper - Web Roll Purchases | 52,260 | 52,260 | 52,260 | 52,260 | 209,038 |
| Ink | 4,013 | 4,013 | 4,013 | 4,013 | 16,052 |
| UV Coating | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 |
| Ink - Web | 6,173 | 6,173 | 6,173 | 6,173 | 24,694 |
| Other Chargeable Materials | 5,500 | 5,500 | 5,500 | 5,500 | 22,000 |
| Outside Services | 4,499 | 4,499 | 4,499 | 4,499 | 17,996 |
| Outside Commissions Paid | 1,125 | 1,125 | 1,125 | 1,125 | 4,499 |
| Total Materials & Outside Service Expenses | 87,792 | 87,792 | 87,792 | 87,792 | 351,168 |
| Total Plant Payroll Expense | 68,298 | 68,298 | 68,298 | 68,298 | 273,191 |
| Fixed Plant Expenses | | | | | |
| Insurance Expense | 2,855 | 2,855 | 2,855 | 2,855 | 11,422 |
| Taxes-Property | 2,191 | 2,191 | 2,191 | 2,191 | 8,764 |
| Total Fixed Plant Expenses | 5,047 | 5,047 | 5,047 | 5,047 | 20,186 |
| Variable Plant Expenses | | | | | |
| Repairs & Maintenance | 12,500 | 12,500 | 12,500 | 12,500 | 50,000 |
| Freight | 5,843 | 5,843 | 5,843 | 5,843 | 23,373 |
| Supplies | 11,727 | 11,727 | 11,727 | 11,727 | 46,906 |
| Utilities | 13,664 | 13,664 | 13,664 | 13,664 | 54,656 |
| Utility Deposit | - | - | 6,500 | 6,500 | 13,000 |
| Total Variable Plant Expenses | 43,734 | 43,734 | 50,234 | 50,234 | 187,935 |
| Administrative Expenses | | | | | |
| Salary-Jim Boyd Sr. / Jim Boyd Jr. | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| Legal Expense | - | - | - | - | - |
| CRO Fees | 10,000 | 10,000 | 10,000 | 10,000 | 40,000 |
| Wages-Accounting Employees | 2,959 | 2,959 | 2,959 | 2,959 | 11,838 |
| Wages-Other Administrative Employees | 562 | 562 | 562 | 562 | 2,248 |
| Payroll Taxes | 308 | 308 | 308 | 308 | 1,231 |
| Payroll Taxes-Past Due Payroll Taxes[1] | 2,000 | 2,000 | 2,000 | 2,000 | 8,000 |
| Workers' Compensation | 143 | 143 | 143 | 143 | 573 |
| Life Insurance | 1,274 | 1,274 | 1,274 | 1,274 | 5,096 |
| Computer Expense-Admin | 475 | 475 | 475 | 475 | 1,901 |
| Repairs & Maintenance - Non Plant | 66 | 66 | 66 | 66 | 265 |
| Telephone / Internet Expense | 1,438 | 1,438 | 1,438 | 1,438 | 5,753 |
| Total Administrative Expense | 22,226 | 22,226 | 22,226 | 22,226 | 88,905 |
| Total Selling Expenses (Sales force salaries & expenses) | 17,413 | 17,413 | 17,413 | 17,413 | 69,652 |
| Total Monthly Expenses | 244,509 | 244,509 | 251,009 | 251,009 | 991,037 |
| **Total Cash Flow for Period** | 30,491 | 30,491 | 23,991 | 23,991 | 108,963 |

1  By separate motion, Debtor asking for authority to pay past due payroll taxes.